## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| PNC BANK, NATIONAL ASSOCIATION, successor to NATIONAL CITY BANK, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Case No.: |
| SHARON SKLAROV,<br>        Serve: 221 S. Ridge Road<br>               Lake Forest, IL 60045 | ) ) ) ) ) | |
| VLADIMIR SKLAROV, a/k/a<br>VAL SKLAROV,<br>        Serve: 221 S. Ridge Road<br>               Lake Forest, IL 60045 | ) ) ) ) ) | |
| SKLAROV REVOCABLE CHILDREN'S TRUST DATED FEBRUARY 17, 1998<br>        Serve: Sharon Sklarov<br>               221 S. Ridge Road<br>               Lake Forest, IL 60045 | ) ) ) ) ) ) ) | |
| LP XXIV, LLC<br>        Serve: Vladimir Sklarov<br>               221 S. Ridge Road<br>               Lake Forest, IL 60045 | ) ) ) ) ) | |
| LUXURY TOWNHOMES, LLC,<br>        Serve: Vladimir Sklarov<br>               221 S. Ridge Road<br>               Lake Forest, IL 60045 | ) ) ) ) ) | |
| KIDZ REAL ESTATE GROUP, LLC,<br>        Serve: Vladimir Sklarov<br>               221 S. Ridge Road<br>               Lake Forest, IL 60045 | ) ) ) ) ) | |
| AND | ) ) | |

CHICAGO LAND TRUST COMPANY, )
As Trustee Under A Trust Agreement )
Dated July 16, 1997 and Known as Trust )
Number 1104283, )
     Serve: Vladimir Sklarov )
         221 S. Ridge Road )
         Lake Forest, IL 60045 )
                  )
     Defendants. )

## COMPLAINT

COMES NOW PNC Bank, National Association, successor to National City Bank, and for its complaint against Defendants Sharon Sklarov, Vladimir Sklarov, Sklarov Revocable Children's Trust dated 2/17/98, LP XXIV, LLC, Luxury Townhomes, LLC, Kidz Real Estate Group, LLC, and Chicago Land Trust Company, alleges and states as follows:

## ALLEGATIONS COMMON TO ALL COUNTS

1.     PNC Bank, National Association, successor to National City Bank (the "Bank"), is a national bank and a citizen of Delaware pursuant to 28 USC § 1348.

2.     Defendant Sharon Sklarov ("Sklarov") is an individual who is a citizen of Lake County, Illinois.

3.     Defendant Vladimir Sklarov a/k/a Val Sklarov ("Val Sklarov") is an individual who is a citizen of Lake County, Illinois.

4.     Defendant Sklarov Revocable Children's Trust ("Sklarov Trust") is a corporation organized and existing under the laws of the State of Illinois with its corporate headquarters in Lake Forest, Illinois.

5.     Defendant LP XXIV, LLC ("LP XXIV") is a limited liability company whose members are citizens of Lake Forest, Illinois, as such it is a citizen of the State of Illinois.

2

6.     Defendant Luxury Townhomes, LLC (Luxury") is a limited liability company whose members are citizens of Lake Forest, Illinois, as such it is a citizen of the State of Illinois.

7.     Defendant Kidz Real Estate Group, LLC ("Kidz") is a limited liability company whose members are citizens of Lake Forest, Illinois, as such it is a citizen of the State of Illinois.

8.     Defendant Chicago Land Trust Company ("Chicago") is an Illinois land trust which owns property in the State of Illinois and is a citizen of the State of Illinois.

9.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 in that the parties have complete diversity of citizenship and the amount in controversy exceeds $75,000 exclusive of interest and costs.

10.     This Court has both specific and general personal jurisdiction over Defendants because (1) Defendants have entered into contracts in this jurisdiction and (2) Defendants can be found for service in this jurisdiction.

11.     Venue is proper pursuant to 28 U.S.C. § 1391.

## THE GUARANTIES

12.     Contemporaneous with the execution and in consideration for the execution of the Sklarov Note, *infra* Paragraph 17, as set forth herein, National City Bank of Michigan/Illinois, now a part of PNC Bank by merger, required and was given a Guaranty of Vladimir Sklarov ("V. Sklarov Guaranty") dated November 25, 2003 as further consideration for extension of the note to Sharon Sklarov as more fully set forth herein.  A true and accurate copy of the Guaranty is attached hereto and incorporated herein by reference as Exhibit A.

3

13.     Contemporaneous with the execution and in consideration for the execution of the LP XXIV Note, *infra* Paragraph 18, as set forth herein, National City Bank of Michigan/Illinois, now a part of PNC Bank by merger, required and was given a Guaranty of Sharon Sklarov, Vladimir Sklarov and Sklarov Revocable Children's Trust dated May 4, 2004 ("LP XXIV Guaranty") as further consideration for extension of the note to LP XXIV as more fully set forth herein.   A true and accurate copy of the Guaranty is attached hereto and incorporated herein by reference as Exhibit B.

14.     Contemporaneous with the execution and in consideration for the execution of the Kidz Note, *infra* Paragraph 19, as set forth herein, National City Bank of the Midwest, now a part of PNC by merger, required and was given a Guaranty of Payment and Completion of Sharon Sklarov, Vladimir Sklarov and Sklarov Revocable Children's Trust dated February 17, 1998, dated January 31, 2005 ("Kidz Guaranty") as further consideration for extension of the note to Kidz as more fully set forth herein.   A true and accurate copy of the Guaranty is attached hereto and incorporated herein by reference as Exhibit C.

15.     Contemporaneous with the execution and in consideration for the execution of the Luxury Note, *infra* Paragraph 21, as set forth herein, National City Bank, now a part of PNC Bank by merger, required and was given a Guaranty of Payment and Completion of Vladimir Sklarov and Sharon Sklarov dated May 15, 2007 ("Luxury Guaranty") as further consideration for extension of the note to Luxury as more fully set forth herein.   A true and accurate copy of the Guaranty is attached hereto and incorporated herein by reference as Exhibit D.

## THE NOTES

16.     On or about November 25, 2003, Defendant Sharon Sklarov executed a Term Note ("Sklarov Note"), a Line of Credit Note ("Sklarov Line Note") and associated loan documents as will be set forth herein with National City Bank of Michigan/Illinois, now a part of PNC Bank by merger, for the purchase of property at 500 N. Broadway, St. Louis, Missouri.  True and accurate copies of the Sklarov Note and Sklarov Line Note are attached hereto and incorporated herein by reference as Exhibits E and F.

17.     On or about May 4, 2004, LP XXIV, LLC executed a Note ("LP XXIV Note") and associated loan documents as will be set forth herein with National City Bank of Michigan/Illinois, now a part of PNC Bank by merger, for the purchase and development of property at 3636 Mission Drive, Indianapolis, Indiana.  A true and accurate copy of the Note is attached hereto and incorporated herein by reference as Exhibit G.

18.     On or about January 31, 2005, Kidz Real Estate Group, LLC executed a Note ("Kidz Note") and associated loan documents as will be set forth herein with National City Bank of the Midwest, now a part of PNC Bank by merger, for the purchase of property at 1233 Crib Street, Toledo, Ohio.  A true and accurate copy of the Note is attached hereto and incorporated herein by reference as Exhibit H.

19.     On or about May 15, 2007, Defendants Sharon Sklarov, Vladimir Sklarov, and Chicago Title Land Trust Company, as Trustee under a Trust Agreement dated 7/16/97 as Trust Number 1104283, executed a Note ("Chicago Note") and associated loan documents as will be set forth herein with National City Bank, now a part of PNC Bank by merge, for the purchase of property at 426 W. Belmont Avenue, Chicago,

Illinois. A true and accurate copy of the Note is attached hereto and incorporated herein by reference as Exhibit I.

20.     On or about May 15, 2007, Luxury Townhomes, LLC executed a Note ("Luxury Note") and associated loan documents as will be set forth herein with National City Bank, now a part of PNC Bank by merger, for the purchase of property at 7702 Harcourt Road, Indianapolis, Indiana. A true and accurate copy of the Note is attached hereto and incorporated herein by reference as Exhibit J.

## THE DEMANDS

21.     On or about October 13, 2009, demand was made by plaintiff's successor, National City Bank, on Sharon Sklarov regarding her failure to pay the Sklarov Note as set forth herein. A true and accurate copy of this demand letter is attached hereto and incorporated herein by reference as Exhibit K.

22.     On or about October 13, 2009, demand was made by plaintiff's successor, National City Bank, on LP XXIV, LLC regarding its failure to pay the LP XXIV Note as set forth herein. A true and accurate copy of this demand letter is attached hereto and incorporated herein by reference as Exhibit L.

23.     On or about October 13, 2009, demand was made by plaintiff's successor, National City Bank, on Kidz regarding its failure to pay the Kidz Note as set forth herein. A true and accurate copy of this demand letter is attached hereto and incorporated herein by reference as Exhibit M.

24.     On or about November 9, 2009, demand was made by plaintiff's successor, National City Bank, on Sharon Sklarov and Vladimir Sklarov regarding their failure to pay the Chicago Note as set forth herein. A true and accurate copy of this demand letter is attached hereto and incorporated herein by reference as Exhibit N.

25.     On or about November 9, 2009, demand was made by plaintiff's successor, National City Bank, on Luxury regarding its failure to pay the Luxury Note as set forth herein.  A true and accurate copy of this demand letter is attached hereto and incorporated herein by reference as Exhibit O.

**COUNT I**
**SUIT ON GUARANTY OF NOTES — SHARON SKLAROV**

26.     Bank repeats and incorporates herein by reference the allegations set forth in paragraphs 1 through 25.

27.     In order to induce Bank to make the loans to LP XXIV, LLC, Luxury Townhomes, LLC, and Kidz Real Estate Group, LLC, as evidenced by the LP XXIV Note, Luxury Note and Kidz Note ("S. Sklarov Guaranteed Notes") set forth hereinabove and in consideration thereof, Defendant Sharon Sklarov absolutely and unconditionally guaranteed full and punctual payments in satisfaction of the indebtedness of LP XXIV, LLC, Luxury Townhomes, LLC, and Kidz Real Estate Group, LLC, by her guaranties of payment ("S. Sklarov Guaranties").  True and accurate copies of the Guaranties are attached hereto and incorporated herein by reference as Exhibits B, C and D.

28.     Bank is a present owner and holder of the S. Sklarov Guaranteed Notes and S. Sklarov Guaranties.

29.     By letters dated October 13, 2009 and November 9, 2009, Bank advised S. Sklarov that the S. Sklarov Guaranteed Notes had matured, were due and payable and demanded payment under the S. Sklarov Guaranties.  True and accurate copies of the Guaranty Demand Letters are attached hereto and incorporated herein by reference as Exhibits L, M, and O.

30.     Despite written demand for payment of the indebtedness being made Sharon Sklarov has failed, neglected and refused to make payment of this indebtedness.

Wherefore Plaintiff PNC respectfully (1) demands judgment against Sharon Sklarov as follows: (a) $34,039,998.35; (b) additional interest on the notes after October 13, 2009 at the default rate of interest until judgment; (c) attorneys' fees and costs and other fees and costs as provided by the notes; (d) post-judgment interest as provided by law on the total amount determined by this court with a prayer for relief on subparagraphs (a) through (d) above until paid and request such other and further relief as the court may deem just and appropriate.

## COUNT II
## SUIT ON GUARANTY OF NOTES — VLADIMIR SKLAROV

31.     Bank repeats and incorporates herein by reference the allegations set forth in paragraphs 1 through 30.

32.     In order to induce Bank to make the loans to Sharon Sklarov, LP XXIV, LLC, Luxury Townhomes, LLC, and Kidz Real Estate Group, LLC, evidenced by the Sklarov Note, LP XXIV Note, Luxury Note and Kidz Note ("V. Sklarov Guaranteed Notes") as set forth hereinabove and in consideration thereof, Defendant Vladimir Sklarov absolutely and unconditionally guaranteed full and punctual payments in satisfaction of the indebtedness of Sharon Sklarov, LP XXIV, LLC, Luxury Townhomes, LLC, and Kidz Real Estate Group, LLC, to Bank by guaranties of payment ("V. Sklarov Guaranties"). True and accurate copies of the Guaranties are attached hereto and incorporated herein by reference as Exhibits A, B, C, and D.

33.     Bank is a present owner and holder of the V. Sklarov Guaranteed Notes and the V. Sklarov Guaranties.

34.    By letters dated October 13, 2009 and November 9, 2009 Bank advised V. Sklarov that the V. Sklarov Guaranteed Notes had matured and were due and payable. The Bank then demanded payment under the V. Sklarov Guaranties. True and accurate copies of the Guaranty Demand Letters are attached hereto and incorporated herein by reference as Exhibits K, L, M, and O.

35.    Despite written demand for payment of the indebtedness being made, Vladimir Sklarov has failed, neglected and refused to make payment of this indebtedness.

Wherefore Plaintiff PNC respectfully (1) demand judgment against Vladimir Sklarov as follows: (a)$46,195,929.61; (b) additional interest on the notes after October 13, 2009 at the default rate of interest until judgment; (c) attorneys' fees and costs and other fees and costs as provided by the notes; (d) post-judgment interest as provided by law on the total amount determined by this court with a prayer for relief on subparagraphs (a) through (d) above until paid and request such other and further relief as the court may deem just and appropriate.

**COUNT III**
**SUIT ON GUARANTY OF NOTES — SKLAROV REVOCABLE CHILDREN'S TRUST DATED FEBRUARY 17, 1998**

36.    Bank repeats and incorporates herein by reference the allegations set forth in paragraphs 1 through 35.

37.    In order to induce Bank to make the loans to LP XXIV, LLC and Kidz Real Estate Group, LLC, evidenced by the LP XXIV Note and Kidz Note ("Sklarov Revocable Children's Trust Guaranteed Notes") set forth hereinabove and in consideration thereof Defendant Sklarov Revocable Children's Trust Dated February 17, 1998 absolutely unconditionally guaranteed full and punctual payments in satisfaction of the indebtedness of LP XXIV, LLC and Kidz Real Estate Group, LLC, to Bank by

guaranties of payment ("Sklarov Revocable Children's Trust Guaranties"). True and accurate copies of the Sklarov Revocable Children's Trust Guaranties of payment are attached hereto and incorporated herein as Exhibits B and C.

38.     Bank is a present owner and holder of the Sklarov Revocable Children's Trust Guaranteed Notes and the Sklarov Revocable Children's Trust Guaranties.

39.     By letters dated October 13, 2009 and November 9, 2009 Bank advised Sklarov Revocable Children's Trust that the Sklarov Revocable Children's Trust Guaranteed Notes had matured, were due and payable. The Bank then demanded payment under the Sklarov Revocable Children's Trust Guaranties. True and accurate copies of the Guaranty Demand Letters are attached hereto and incorporated herein by reference as Exhibits L and M.

40.     Despite written demand for payment of the indebtedness being made Sklarov Revocable Children's Trust Dated February 17, 1998 has failed, neglected and refused to make payment of this indebtedness.

WHEREFOR Plaintiff PNC respectfully (1) demands judgment against the Sklarov Revocable Children's Trust Dated February 17, 1998 as follows:     (a) $22,704,837.31; (b) additional interest on the notes after October 13, 2009 at the default rate of interest until judgment; (c) attorneys' fees and costs and other fees and costs as provided by the notes; (d) post-judgment interest as provided by law on the total amount determined by this court with a prayer for relief on subparagraphs (a) through (d) above until paid and request such other and further relief as the court may deem just and appropriate.

## COUNT IV
## SUIT ON NOTE AND FOR RECEIVER — SHARON SKLAROV
## (500 NORTH BROADWAY, ST. LOUIS, MISSOURI)

41.     Bank repeats and incorporates herein by reference the allegations set forth in paragraphs 1 through 40.

42.     Prior to August 19, 2009 Bank made a series of loans to Sharon Sklarov and as evidence of the loans, Sharon Sklarov made, executed and delivered to Bank its Term Note dated November 25, 2003 ("Sklarov Note") and its line of Credit Note dated November 25, 2003 ("Sklarov Line of Credit"). True and accurate copies of the Term Note and Credit Note are attached hereto and incorporated herein by reference as Exhibits E and F.

43.     On or about December 13, 2006, April 13, 2007, June 15, 2007, August 31, 2007, December 31, 2007, March 5, 2008, June 5, 2008 and September 5, 2008, the parties entered into loan modification agreements. True and accurate copies of the Loan Agreement and Eighth Loan Modification are attached hereto and incorporated herein by reference as Exhibits P and Q. ("Sklarov Loan Modification").

44.     Sharon Sklarov made, executed and delivered to Bank its Deed of Trust, Security Agreement, Assignment of Leases and Rents, Fixture Filing, its Eighth Loan Modification dated September 5, 2008 in the principal sum of $9,600,000.00 with a non-revolving line of credit in an amount equal to $4,266,000.00.

45.     As of the date of the Eighth Loan Modification, the outstanding principal balance of the Sklarov Note was $8,910,050.00 and the outstanding balance of the Sklarov Line of Credit was $2,911,936.00.

46.     The Eighth Loan Modification agreement further provided in paragraph 4c that the maturity date was either September 5, 2009 or the date on which the debt

becomes due and payable pursuant to the provisions of the loan documents (whether by acceleration or otherwise).

47.    In connection with the notes Sharon Sklarov made, executed and delivered to Bank its Deed of Trust, Security Agreement, Assignment of Leases and Rents and Fixture Filing dated November 25, 2003 ("Sklarov Deed of Trust"). A true and accurate copy of the Deed of Trust is attached hereto and incorporated herein by reference as Exhibit R.

48.    In conjunction with the notes Sharon Sklarov made, executed and delivered to Bank her Assignment of Leases and Rents dated November 25, 2003 ("Sklarov Assignment of Leases and Rents"). A true and accurate copy of the Sklarov Assignment of Leases and Rents is attached hereto and incorporated herein by reference as Exhibit S. The Sklarov Assignment of Leases and Rents was recorded with the recorder of deeds for the City of St. Louis, Missouri on or about November 26, 2009.

49.    The Sklarov Deed of Trust provides, *inter alia*, that "If an Event of Default shall have occurred and be continuing, Beneficiary or Trustee as a matter of right and without notice to Grantor, unless otherwise required by applicable law, and without regard to the then value of the Mortgaged Property or the interest of the Grantor therein, shall have the right to apply to any court having jurisdiction to appoint a receiver or receivers or other manager of the Mortgaged Property, and Grantor hereby irrevocably consents to such appointment and waives notice of any application therefore (except as may be required by law). The Deed of Trust further provides "Any such receiver or receivers shall have all the usual powers and duties of receivers in like or similar cases and all the powers and duties of Beneficiary or Trustee in case of entry as provided in this

Deed of Trust, including, without limitation to the extent permitted by law, the right to enter into leases of the Mortgaged Property, and shall continue as such and exercise all such powers until the date of confirmation of sale of the Mortgaged Property unless such receivership is sooner terminated."

50.     Bank is the present owner and holder of the notes.

51.     By letter dated October 13, 2009 Bank advised Sharon Sklarov that the notes had matured that they were due and payable in full and that she had failed to pay the notes (the "Sklarov Note Demand Letters"). True and accurate copies of the Sklarov Note Demand Letter is attached hereto and incorporated herein by reference as Exhibit K.

52.     The indebtedness represented by the notes is presently due and payable and Sharon Sklarov is obligated to pay the full indebtedness as evidenced by the notes. As of October 12, 2009 there was due and owing to the Bank on the notes the following amounts:  Sklarov Note: $8,662,900.00 Principal, Interest $25,215.26; Sklarov Note Late Charge $433,145.00; Sklarov Line of Credit $2,880,556.25; and Sklarov Line of Credit Interest $9,786.93. Interest continues to accrue on the notes from October 13, 2009 at the default rate of interest as stated in the respective notes.

53.     Pursuant to the terms of each note Bank is also entitled to its attorneys' fees and expenses and other costs and expenses properly chargeable.

54.     Despite written demand for payment of this indebtedness being made, Sharon Sklarov has failed, neglected and refused to make payment of this indebtedness.

55.     Upon information and belief, Bank is Sharon Sklarov's primary broad based secured lender.

56. Bank will contemporaneously file its motion for appointment of receiver in this matter to provide a constant and consistent disclosure to Bank regarding the financial and operational matters of Sharon Sklarov in relation to the secured property and to secure and protect same while the property is prepared for sale.

57. Upon information and belief, the financial condition of Sharon Sklarov has continued to deteriorate putting both Sharon Sklarov's liability and the Bank's collateral at risk.

58. Appointment of a receiver is necessary to ensure that the Bank's collateral is preserved, collected and paid to Bank by any entity with an economic incentive to achieve good results.

WHEREFORE Plaintiff PNC respectfully (1) demands judgment against Defendant Sharon Sklarov on the Sklarov Notes as follows: (a) term note (i) the principal amount of $8,662,900.00, (ii) accrued interest through October 13, 2009 of $25,515.26, (iii) late charges of $433,145.00; (b) revolving line of credit note (i) the principal amount of $2,880,556.26, (ii) accrued interest through October 13, 2009 of $9,786.93, (iii) late charges of $144,027.81; (c) additional interest on the notes after October 13, 2009 at the default rate of interest until judgment; (d) attorneys' fees and costs and other fees and costs as provided by the notes; (e) post-judgment interest as provided by law in the total amount as determined by the Court, with a prayer for relief on subparagraphs (a) through (d) above until paid, and (2) request the immediate appointment of a receiver to take immediate custody and control of 500 North Broadway, the property secured by the notes referenced above, and (3) request such other and further relief as the Court deems just and equitable.

## COUNT V
## SUIT ON NOTE AND FOR RECEIVER — LP XXIV, LLC
## (3636 MISSION DRIVE, INDIANAPOLIS, INDIANA)

59.     Bank repeats and incorporates herein by reference the allegations set forth in paragraphs 1 through 58.

60.     Prior to August 19, 2009, Bank made a loan and a series of loan modifications to LP XXIV, LLC and as evidence of the loans, LP XXIV, LLC made, executed and delivered to Bank its Acquisition & Construction Loan Agreement dated May 4, 2004 ("LP XXIV Loan Agreement").  A true and accurate copy of the LP XXIV, LLC Acquisition and Construction Loan Agreement is attached hereto and incorporated herein by reference as Exhibit T.

61.     On or about September 11, 2006, June 9, 2007, January 31, 2008 and July 31, 2008, the parties entered into loan modification agreements.  A true and accurate copy of the Fourth Loan Modification dated July 31, 2008 is attached hereto and incorporated herein by reference as Exhibit U.

62.     As of the date of the Fourth Loan Modification, the outstanding principal balance of the Loan was $13,490,399.77 ("LP XXIV Loan Modification").

63.     The Fourth Loan Modification agreement further provided in paragraph 3 that the maturity date was either July 31, 2009 or "the date on which the debt becomes due and payable pursuant to the provisions of the loan documents (whether by acceleration or otherwise)."

64.     In connection with the notes LP XXIV, LLC made, executed and delivered to Bank its Security Agreement dated May 4, 2004 ("LP XXIV Security Agreement").  A true and accurate copy of the Agreement is attached hereto and incorporated herein by reference as Exhibit V.

15

65.     In conjunction with the notes LP XXIV, LLC made, executed and delivered to Bank its Construction Mortgage, Security Agreement, Assignment of Leases and Rents and Fixture Filing ("LP XXIV Mortgage").  A true and accurate copy of the Assignment of Leases and Rents is attached hereto and incorporated herein by reference as Exhibit W.  The LP XXIV Mortgage was recorded with the Marion Indiana County Recorder on or about May 10, 2004.

66.     The LP XXIV Mortgage provides, *inter alia*, that "Upon or at any time after the filing of a complaint to foreclose this Mortgage, the court in which such complaint is filed shall, upon petition by Mortgagee, appoint a receiver for the Premises in accordance with the Act.  Such appointment may be made either before or after sale, without notice, without regard to the solvency or insolvency of Mortgagor at the time of application for such receiver and without regard to the value of the Premises or whether the same shall be then occupied as a homestead or not and Mortgagee hereunder or any other holder of the Note may be appointed as such receiver."

67.     The LP XXIV Mortgage further provides, *inter alia*, that "Such receiver shall have power to collect the rents, issues and profits of the Premises (i) during the pendency of such foreclosure suit, (ii) in case of a sale and a deficiency, during the full statutory period of redemption, whether there be redemption or not, and (iii) during any further times when Mortgagor, but for the intervention of such receiver, would be entitled to collect such rents, issues and profits.  Such receiver also shall have all other powers and rights that may be necessary or are usual in such cases for the protection, possession, control, management and operation of the Premises during said period, including, to the extent permitted by law, the right to lease all or any portion of the Premises for a term

16

that extends beyond the time of such receiver's possession without obtaining prior court approval of such lease."

68.     Bank is the present owner and holder of the LP XXIV Note.

69.     By letter dated October 13, 2009 Bank advised LP XXIV, LLC that the notes had matured, were due and payable in full and LP XXIV, LLC has failed to pay the note (the "Note Demand Letter"). A true and accurate copy of the Note Demand Letter is attached hereto and incorporated herein by reference as Exhibit L.

70.     The indebtedness represented by the notes is presently due and payable and LP XXIV, LLC is obligated to pay the full indebtedness as evidenced by the notes. As of October 13, 2009, there was due and owing to the Bank on the notes the following amounts:  LP XXIV Note $13,490,399.77, Principal Interest $14,601.68, and Late Charge $679,486.30.  Interest continues to accrue on the notes from October 13, 2009 at the default rate of interest as stated in the respective notes.

71.     Pursuant to the terms of the LP XXIV Note Bank is also entitled to its attorneys' fees and expenses and other costs and expenses properly chargeable.

72.     Despite written demand for payment of this indebtedness being made LP XXIV, LLC has failed, neglected and refused to make payment of this indebtedness.

73.     Upon information and belief, Bank is LP XXIV, LLC's primary broad based secured lender.

74.     Bank will contemporaneously file its Motion for Appointment of Receiver in this matter to provide a constant and consistent disclosure to Bank regarding the financial and operational matters of LP XXIV, LLC in relation to the secured property and to secure and protect same while the property is prepared for sale.

75.     Upon information and belief, the financial condition of LP XXIV, LLC has continued to deteriorate putting both LP XXIV, LLC's liability and the Bank's collateral at risk.

76.     Appointment of a receiver is necessary to ensure that the Bank's collateral is preserved, collected and paid to Bank by any entity with an economic incentive to achieve good results.

WHEREFORE Plaintiff PNC respectfully (1) demands judgment against Defendant LP XXIV, LLC on the LP XXIV Note as follows:  (a) (i) the principal amount of $13,490,399.77, (ii) accrued interest through October 13, 2009 of $14,601.68, (iii) accrued additional interest on the notes after October 13, 2009 at the default rate of interest until judgment, (iv)late charges of $679,486.30; (d) attorneys' fees and costs and other fees and costs as provided by the notes; (e) post-judgment interest as provided by law in the total amount as determined by the Court, with a prayer for relief on subparagraphs (a) through (d) above until paid, and (2) requests the immediate appointment of a receiver to take immediate custody and control of the property at 3636 Mission Drive, Indianapolis, IN 46224, the property secured by the notes referenced above, and (3) requests such other and further relief as the Court deems just and equitable.

### COUNT VI
### SUIT ON NOTE AND FOR RECEIVER — LUXURY TOWNHOMES, LLC
### (7702 HARCOURT ROAD, INDIANAPOLIS, INDIANA)

77.     Bank repeats and incorporates herein by reference the allegations set forth in paragraphs 1 through 76.

78.     On May 15, 2007 Bank made a Loan to Luxury Townhomes, LLC and as evidence of the loans Luxury Townhomes, LLC made, executed and delivered to Bank its

Note ("Luxury Note"). A true and accurate copy of the Note is attached hereto and incorporated herein by reference as Exhibit J.

79. Luxury Townhomes, LLC made, executed and delivered to Construction Loan Agreement dated May 17, 2007 in the principal sum of $12,000,000.00 ("Luxury Loan Agreement"). A true and accurate copy of the Agreement is attached hereto and incorporated herein by reference as Exhibit X.

80. As of November 9, 2009 the outstanding principal balance of the Luxury Note was $11,317,346.90.

81. The Luxury Loan Agreement provides in Section 9(j) that the Luxury Note shall become due if the debtor or Guarantors are in default to Bank, whether by acceleration or otherwise, in the payment of indebtedness for borrowed money guaranteed by Guarantors (the "Luxury Cross Default"). Luxury has been placed on notice, both through correspondence and this lawsuit that they are each in default of other obligations to Bank and as such the Luxury Note is in default.

82. In connection with the notes Luxury Townhomes, LLC made, executed and delivered to Bank its Construction Mortgage, Security Agreement, Assignment of Leases & Rents and Fixture Filing dated May 15, 2007 ("Luxury Mortgage"). A true and accurate copy of the Luxury Mortgage is attached hereto and incorporated herein by reference as Exhibit Y. The Luxury Mortgage was recorded with the Marion, Indiana County Recorder on or about May 24, 2007.

83. In conjunction with the notes Luxury Townhomes, LLC made, executed and delivered to Bank its Security Agreement dated May 15, 2007 ("Luxury Security").

A true and accurate copy of the Luxury Security is attached hereto and incorporated herein by reference as Exhibit Z.

84.     In conjunction with the notes Luxury Townhomes, LLC made, executed and delivered to Bank its Assignment of Leases and Rents ("Luxury Assignment"). A true and accurate copy of the Assignment of Leases and Rents is attached hereto and incorporated herein by reference as Exhibit AA. The Luxury Assignment was recorded with the Marion Indiana County Recorder on or about May 24, 2007.

85.     The Luxury Loan Agreement in Section 9.2 provides, "Upon the occurrence of any Event of Default, Borrower agrees that Lender…as Lender deems advisable to protect and enforce its rights against Borrower in and to the Collateral" may at §9.2(a)(ii) "institute proceedings, judicial or otherwise, or take any other action, for the enforcement of Lender's rights under the Loan Documents or at law or in equity, including the appointment of a receiver, the foreclosure, auction or sale (public or private) of the Collateral or any portion thereof."

86.     Bank is the present owner and holder of the Luxury Note.

87.     By letter dated November 9, 2009 Bank advised Luxury Townhomes, LLC that the notes had matured and were due and payable in full. The Bank then notified Luxury Townhomes, LLC it had failed to pay the note (the "Note Demand Letter"). A true and accurate copy of the Note Demand Letter is attached hereto and incorporated herein by reference as Exhibit O.

88.     The indebtedness represented by the Luxury Note is presently due and payable and Luxury Townhomes, LLC is obligated to pay the full indebtedness as evidenced by the Luxury Note. As of October 13, 2009, there was due and owing to the

Bank on the notes the following amounts: Luxury Note $11,317,396.90, Principal Interest $17,633.04, and Late Charges $131.10. Interest continues to accrue on the notes from 4/9/09 at the default rate of interest as stated in the respective notes.

89. Pursuant to the terms of the Luxury Note and Luxury Loan Agreement, Bank is also entitled to its attorneys' fees and expenses and other costs and expenses properly chargeable.

90. Despite written demand for payment of this indebtedness being made, Luxury Townhomes, LLC has failed, neglected and refused to make payment of this indebtedness.

91. Upon information and belief, Bank is Luxury Townhomes, LLC's primary broad based secured lender.

92. Bank will contemporaneously file its Motion for Appointment of Receiver in this matter to provide a constant and consistent disclosure to Bank regarding the financial and operational matters in relation to the secured property and to secure and protect same while the property is prepared for sale.

93. Upon information and belief, the financial condition of Luxury Townhomes, LLC has continued to deteriorate, putting both Luxury Townhomes, LLC's liability and the Bank's collateral at risk.

94. Appointment of a Receiver is necessary to ensure that the Bank's collateral is preserved, collected and paid to Bank by any entity with an economic incentive to achieve good results.

WHEREFORE Plaintiff PNC respectfully (1) demands judgment against Defendant Luxury Townhomes, LLC on the notes as follows: (a) Luxury Note (i) the

principal amount of $11,317,396.90, (ii) accrued interest through November 9, 2009 of $17,633.04, and (iii) late Charges $131.10; (b) additional interest on the notes after November 9, 2009 at the default rate of interest until judgment; (c) attorneys' fees and costs and other fees and costs as provided by the notes; (d) post-judgment interest as provided by law in the total amount as determined by the Court, with a prayer for relief on subparagraphs (a) through (d) above until paid, and (2) requests the immediate Appointment of a Receiver to take immediate custody and control of the property at 7702 North Harcourt Road, Indianapolis, IN, the property secured by the notes referenced above, and (3) requests such other and further relief as the Court deems just and equitable.

## COUNT VII
### SUIT ON NOTE AND FOR RECEIVER —KIDZ REAL ESTATE GROUP, LLC (1233 CRIBB STREET, TOLEDO, OHIO)

95.     Bank repeats and incorporates herein by reference the allegations set forth in paragraphs 1 through 94.

96.     Prior to August 19, 2009 Bank made a series of loans to Kidz Real Estate Group, LLC and as evidence of the loans Kidz Real Estate Group, LLC made, executed and delivered to Bank its Note dated January 31, 2005 ("Kidz Note"), and its Loan Agreement dated 1/31/04 ("Kidz Loan"), in the principal sum of $8,780,000.00.  True and accurate copies of the Kidz Note and Kidz Loan are attached hereto and incorporated herein by reference as Exhibits H and BB.

97.     On or about January 31, 2008 and July 31, 2008 the parties entered into loan modification agreements.   A true and accurate copy of the Second Loan Modification Agreement ("Kidz Modification") is attached hereto and incorporated herein by reference as Exhibit CC.

98.    Kidz Real Estate Group, LLC made, executed and delivered to Bank its Open End Mortgage, Security Agreement, Assignment of Leases and Rents and Fixture Filing dated January 31, 2005 in the principal sum of $8,780,000.00. ("Kidz Mortgage"). A true and accurate copy of the Kidz Mortgage is attached hereto and incorporated herein by reference as Exhibit DD.

99.    As of the date of the Second Loan Modification, the outstanding principal balance of the Kidz Loan was $8,106,262.40.

100.    The Kidz Modification agreement further provided in Paragraph 3(c) that the maturity date was either July 31, 2009 or the date on which the debt becomes due and payable pursuant to the provisions of the loan documents (whether by acceleration or otherwise). ("Kidz Cross Default")  Luxury has been placed on notice, both through correspondence and this lawsuit, that it is in default of other obligations to Bank and as such the Luxury Note is in default.

101.    In connection with the Kidz Loan, Kidz made, executed and delivered its Security Agreement dated 1/31/05 ("Kidz Security").  A true and accurate copy of the Kidz Security is attached hereto and incorporated herein by reference as Exhibit EE.

102.    In conjunction with the Kidz Note, Kidz Real Estate Group, LLC made, executed and delivered to Bank its Assignment of Leases and Rents dated January 31, 2005 ("Kidz Assignment").  A true and accurate copy of the Kidz Assignment is attached hereto and incorporated herein by reference as Exhibit FF.  The Assignment of Leases and Rents was recorded with the Lucas County Ohio Recorder on or about February 3, 2005.

103.    The Kidz Loan provides, *inter alia*, "Upon the occurrence of any Event of Default, Borrower agrees that Lender…as Lender deems advisable to protect and enforce its rights against Borrower in and to the Collateral" may at § 9.2(a)(ii) "institute proceedings, judicial or otherwise, or take any other action, for the enforcement of Lender's rights under the Loan Documents or at law or in equity, including the appointment of a receiver, the foreclosure, auction or sale (public or private) of the Collateral or any portion thereof."

104.    Bank is the present owner and holder of the notes.

105.    By letter dated October 13, 2009 Bank advised Kidz Real Estate Group, LLC that the notes had matured, were due and payable in full and Kidz Real Estate Group, LLC has failed to pay the note (the "Note Demand Letter"). A true and accurate copy of the Note Demand Letter is attached hereto and incorporated herein by reference as Exhibit M.

106.    The indebtedness represented by the Kidz Note is presently due and payable and Kidz Real Estate Group, LLC is obligated to pay the full indebtedness as evidenced by the notes. As of October 13, 2009, there was due and owing to the Bank on the notes the following amounts: Kidz Note $8,106,262.40, Principal Interest $8,774.04, and Late Charges $405,313.12. Interest continues to accrue on the notes from October 13, 2009 at the default rate of interest as stated in the respective notes.

107.    Pursuant to the terms of the Kidz Loan, Bank is also entitled to its attorneys' fees and expenses and other costs and expenses properly chargeable.

108.    Despite written demand for payment of this indebtedness being made Kidz Real Estate Group, LLC has failed, neglected and refused to make payment of this indebtedness.

109.    Upon information and belief, Bank is Kidz Real Estate Group, LLC's primary broad based secured lender.

110.    Bank will contemporaneously file its Motion for Appointment of Receiver in this matter to provide a constant and consistent disclosure to Bank regarding the financial and operational matters of Kidz in relation to the secured property and to secure and protect same while the property is prepared for sale.

111.    Upon information and belief, the financial condition of Kidz Real Estate Group, LLC has continued to deteriorate, putting both Kidz Real Estate Group, LLC's liability and the Bank's collateral at risk.

112.    Appointment of a Receiver is necessary to ensure that the Bank's collateral is preserved, collected and paid to Bank by any entity with an economic incentive to achieve good results.

WHEREFORE Plaintiff PNC respectfully (1) demands judgment against Defendant Kidz Real Estate Group, LLC on the notes as follows:  (a) term note (i) the principal amount of $8,106,262.40, (ii) accrued interest through October 13, 2009 of $8,774.04, (iii) late charges of $405,313.12; (b) additional interest on the notes after October 13, 2009 at the default rate of interest until judgment; (c) attorneys' fees and costs and other fees and costs as provided by the notes; (d) post-judgment interest as provided by law in the total amount as determined by the Court, with a prayer for relief on subparagraphs (a) through (d) above until paid, and (2) requests the immediate

appointment of a receiver to take immediate custody and control of 500 North Broadway, the property secured by the notes referenced above, and (3) requests such other and further relief as the Court deems just and equitable.

**COUNT VIII**
**SUIT ON NOTE AND FOR RECEIVER — CHICAGO LAND TRUST**
**COMPANY AS TRUSTEE UNDER A TRUST AGREEMENT DATED JULY 16,**
**1997 AND KNOWN AS TRUST NUMBER 1104283**
**(426 WEST BELMONT AVENUE, CHICAGO, ILLINOIS)**

113.   Bank repeats and Vladimir Sklarov and Sharon Sklarov incorporates herein by reference the allegations set forth in paragraphs 1 through 112.

114.   Prior to August 19, 2009 Bank, made a series of loans to Chicago Land Trust Company as Trustee Under a Trust Agreement Dated July 16, 1997 and Known as Trust Number 1104283, Sharon Sklarov and Vladimir Sklarov ("Chicago") and as evidence of the loans Chicago made, executed and delivered to Bank its Note, dated May 15, 2007 ("Chicago Note") and its Loan Agreement dated May 15, 2007 ("Chicago Loan Agreement") in the principal of $8,600,000.00.   True and accurate copies of the Note and Loan Agreement are attached hereto and incorporated herein by reference as Exhibits I and GG.

115.   Chicago Loan Agreement provides in Section 7.1(I) that the Chicago Note shall become due if the debtor or Guarantors are in default to Bank, whether by acceleration or otherwise, in the payment of indebtedness for borrowed money guaranteed by Guarantors.  (the "Luxury Cross Default").   Guarantors have been placed on notice, both through correspondence and this lawsuit, that they are each in default of other obligations to Bank.

116.   In connection with the Chicago Note, Chicago made, executed and delivered to Bank its Mortgage Security Agreement, Assignment of Lease and Rents and

26

Fixture Filing dated May 15, 2007 ("Chicago Mortgage"). A true and accurate copy of the Chicago Mortgage is attached hereto and incorporated herein by reference as Exhibit HH. The Mortgage was recorded with the Cook County, Illinois Recorder of Deeds on or about May 27, 2007.

117. In conjunction with the Chicago Note, Chicago made, executed and delivered to Bank its Assignment of Leases and Rents dated May 15, 2007 ("Chicago Assignment"). A true and accurate copy of the Assignment of Leases and Rents is attached hereto and incorporated herein by reference as Exhibit II. The Assignment of Leases and Rents was recorded with the Cook County, Illinois Recorder of Deeds on or about May 27, 2007.

118. The Chicago Loan provides, *inter alia*, that "Upon the occurrence of any Event of Default, Borrower agrees that Lender…as Lender deems advisable to protect and enforce its rights against Borrower in and to the Collateral" may at §9.2(a)(ii) "institute proceedings, judicial or otherwise, or take any other action, for the enforcement of Lender's rights under the Loan Documents or at law or in equity, including the appointment of a receiver, the foreclosure, auction or sale (public or private) of the Collateral or any portion thereof."

119. Bank is the present owner and holder of the notes.

120. By letter dated November 9, 2009 Bank advised Chicago the notes had matured, were due and payable in full and Chicago had failed to pay the note (the "Note Demand Letter"). A true and accurate copy of the Note Demand Letter is attached hereto and incorporated herein by reference as Exhibit N.

121.    The indebtedness represented by the Chicago Note is presently due and payable and Chicago is obligated to pay the full indebtedness as evidenced by the notes. As of November 9, 2009, there was due and owing to the Bank on the notes the following amounts: Chicago Note $8,743,771.00, Interest $8,897.70. Interest continues to accrue on the notes from 11/9/09 at the default rate of interest as stated in the respective notes.

122.    Pursuant to the terms of the Chicago Note and Chicago Loan Bank is also entitled to its attorneys' fees and expenses and other costs and expenses properly chargeable.

123.    Despite written demand for payment of this indebtedness being made, Chicago has failed, neglected and refused to make payment of this indebtedness.

124.    Upon information and belief, Bank is Chicago's primary broad based secured lender.

125.    Bank will contemporaneously file its Motion for Appointment of Receiver in this matter to provide a constant and consistent disclosure to Bank regarding the financial and operational matters of Chicago in relation to the secured property and to secure and protect same while the property is prepared for sale.

126.    Upon information and belief, the financial condition of Chicago has continued to deteriorate putting both Chicago's liability and the Bank's collateral at risk.

127.    Appointment of a Receiver is necessary to ensure that the Bank's collateral is preserved, collected and paid to Bank by any entity with an economic incentive to achieve good results.

WHEREFORE Plaintiff PNC respectfully (1) demands judgment against Defendants Chicago, Sharon Sklarov and Vladimir Sklarov, jointly & severally on the

notes as follows: (a) Chicago Note (i) the principal amount of $8,743,771.00; (ii) interest

of $8,897.70; (b) additional interest on the Chicago Note after November 9, 2009 at the

default rate of interest until judgment; (c) attorneys' fees and costs and other fees and

costs as provided by the notes; (d) post-judgment interest as provided by law in the total

amount as determined by the Court, with a prayer for relief on subparagraphs (a) through

(d) above until paid, and (2) requests the immediate appointment of a receiver to take

immediate custody and control of the property located at 426 West Belmont Avenue,

Chicago, Illinois, the property secured by the notes referenced above, and (3) requests

such other and further relief as the Court deems just and equitable.

LATHROP & GAGE LLP

*/s/ Blaine C. Kimrey*
Blaine C. Kimrey (ARDC #06279625)
Chicago Mercantile Exchange Center
Suite 2200
30 South Wacker Drive
Chicago, IL 60606
Phone: (312) 920-3302
Fax:    (312) 920-3301

Wendi Alper-Pressman, (ARDC
#06192523)
*(Pro Hac Vice Application Pending)*
Matthew A. Jacober, (ARDC #06256140)
*(Pro Hac Vice Application Pending)*
10 South Broadway, Suite 1300
St. Louis, MO 63102
Phone: (314)613-2500
Fax: (314)613-2550

**Attorneys for PNC Bank, National
Association, successor to National City
Bank**